## The People ex rel. Anson E. Chadwick v. County Officers of St. Clair.

*Board of Supervisors: Removal of County Seat: Delegation of authority:* Where the Board of Supervisors, by a vote of two-thirds, resolved that the county seat of St. Clair should be removed to Port Huron, provided " suitable guarantees" should be given within ninety days for the erection of county buildings free of cost to the county, but submitted to the popular vote the simple resolution of removal, without including the proviso, that submission was held void, as the statute contemplates that the people and the Supervisors shall vote on precisely the same questions.—*L.* 1863, *p.* 30.

No subsequent action by less than a two-thirds vote could lawfully modify the first resolution, and accordingly a majority vote referring it to a committee to examine and approve the proposed security, and an approval by such committee before election, could not make the original resolution cease to be conditional.

The Board of Supervisors cannot delegate such powers as the law requires to be submitted to their corporate discretion and judgment.

*Heard November 9th. Decided November 10th.*

Appeal in Chancery, from St. Clair Circuit.

The bill in this cause was filed to test the legality of certain proceedings for the removal of the county seat from St. Clair to Port Huron, and praying for an injunction.

The Board of Supervisors of St. Clair County, on the 13th day of October, 1865, passed a resolution providing for the removal of the county seat from St. Clair to Port Huron, subject to the following proviso, to wit:

that "suitable guarantees should be given for the erection of the necessary buildings for county purposes, free of cost to the county, and that said guarantees should be given within ninety days from the date of this resolution."

That on the following day, said board by resolution directed that the question of said removal be submitted to the qualified electors of said county, in the manner provided by law, and which was done.

That said board then appointed five of their number as a committee to examine, and, if found satisfactory, to approve the bond required to be given on account of the removal of said county seat.

That no further or other action was had or taken by said Board of Supervisors on the subject of said removal, and no provision was made with respect to the guarantees required by the powers of the first named resolution, relative to the nature or sufficiency of such guarantee, or the receipt or approval of the same, if any should be offered, except the resolution last above set forth; but that subsequently a bond was deposited in the clerk's office of said county, with an endorsement of approval by said persons named in said committee.

That the question of said removal, but not the proviso, having been voted upon by the electors of said county, the board met, and by resolution declared that the county seat be removed from St. Clair to Port Huron, with the records, property, etc.

The bill was demurred to, the demurrer sustained, and the bill dismissed.

*A. E. Chadwick* for complainant.

(No brief was furnished the reporter.)

*Mitchell & Farrand* for defendants.

1. The Board of Supervisors have power to designate a place to which a county seat shall be removed,

whenever such removal is proposed by a two-thirds vote of all the members elect, and after a majority of the electors of such county shall have voted in favor of the proposed location, they also have the power to make and establish such county seat at such place. — *Comp. L.* § 352; *Sess. Laws of* 1863, *p.* 30.

In this case a removal was proposed, and a two-thirds majority of the members elect designated Port Huron as the place, but with a proviso that suitable guarantees should be given for the erection of the necessary buildings free of cost to the county, and that such guarantees should be given within ninety days.

The only question raised by the bill of any importance or seriousness, is, whether the Board of Supervisors had the authority to pass such a resolution; whether the proviso makes it something that they were not authorized to pass.

The board had expended all their authority when they by resolution designated the place. The next thing to be done is to obtain a vote by the electors, and the resolution of designation is necessarily a conditional one, that needs confirmation by a vote of the people.

The proviso must be regarded as applicable to the removal, or designed so to be after the submission to the electors; and there is no way in which it could become operative until that time, and whether they could make a proviso that would hinder its being removed after such designation and vote, is an objection that can scarcely be made, especially as the proviso has been complied with. To remove the county seat needs a proposal, a resolution of removal passed by two-thirds, and a vote of a majority of the electors, and then the removal.

These things have taken place in the only order they could, and all is accomplished except the removal; a large majority having voted for the removal.

If the proviso would render nugatory the resolution,

then the proviso should be disregarded. The legislature gave the Board of Supervisors power to designate the place to which the removal shall be made. They do that. They designate, but by their provisos provide for the expenses of constructing. They have power over the whole matter. Do they exceed their authority? If it is thought that such a proviso ought not to be attached to a designation, is there a necessity for regarding it as attached or intended to be, to the designation. Why not consider it as intended to be a condition of removal.

But an unlawful proviso does not necessarily imply an unlawful resolution, any more than an unlawful proviso in an act of the legislature renders the act void. Such provisos do not render acts void. Laws may be unconstitutional in some of their provisions and valid as to the remainder. — *See* 1 *Mich.* 485; 6 *Id.* 266; 11 *Id.* 139; 13 *Id.* 481.

2. The only other objection of the least importance is that the resolution of designation was not passed by a two-thirds majority of the members of the board elect.

The meaning of this must be two-thirds of the members then constituting the board. If otherwise, one section of a county (being more than one-third) could by resignation before any meeting of the board prevent a vote being taken upon the question of removal.

The resolution was actually passed by a two-thirds vote of all the members elected originally by the change of vote of Julius Granger from no to aye.

The resolution had been declared as passed by a two-thirds vote the previous day, and on the second day, at the opening of the session, Julius Granger asks and obtains leave to change his vote from no to aye, which is granted, and this makes up, with the nineteen votes that had before been given, twenty out of twenty-nine members. There was no need of reconsideration of the previous vote

passing the resolution; it is enough that a body having power over the matter allow a change of vote, so that the record shall stand twenty instead of nineteen in favor of the passage of the resolution. A board of supervisors is not a body bound by any particular formula or set rules by which they were bound to reconsider their vote of the previous day and vote on it again — nineteen had voted for it, and on the second day, before any further action was had upon the matter, one more votes for it, making twenty that voted for it. It is enough that the record of the vote expresses the voice of twenty ayes out of twenty-eight or twenty-nine, as the case may be, in favor of the designation and removal.

The direction of the proposition to be submitted to a vote of the people, did not require a two-thirds vote — only the designation required that vote.

3. The approval of the bond was made by three out of five of the committee.

The guarantee required by the resolution was that it should be suitable; not that it should be approved at all by any body. If it had been "suitable," though all the committee had rejected it, it would be all that was required. Suppose the chairman had been a man in interest with the south end of the county. The committee would not have approved of the bond if John Jacob Astor had signed it. Therefore, it was only necessary that suitable guarantee should be given. Who would say that the guarantee was not suitable? There is no allegation in the bill that the bond or guaranty was not "suitable."

4. The Board of Supervisors did subsequently recognize the bond as suitable, by making provisions for and ordering the removal. The whole question then reverts, had the board power to pass the resolution of designation, as it was passed, and did the condition of suitable guarantees render inoperative the vote, by a two-thirds majority,

15_Mich. — G.

designating the place to which the removal should be made.

We submit that the whole action of the Board of Supervisors has been in strict compliance with the requirements of the Constitution and of the statutes enacted to carry out those requirements, and that in view of public policy, and the declared will of the electors of St. Clair county, the injunction should not be granted, but that the removal of the county seat should be perfected, and the will of the people, as declared by their vote, accomplished.

CHRISTIANCY J.

This bill is filed by the prosecuting attorney of St. Clair county, upon the relation of two citizens of that county, for the purpose of· testing the legality of the proceedings for the removal of the county seat from St. Clair to Port Huron, and asks an injunction to prevent the several defendants from removing their offices to Port Huron.

The case comes before us upon appeal, the bill having been demurred to, and certain facts agreed upon by stipulation, which we shall consider as if stated in the bill.

The propriety of bringing a bill in this form by the prosecuting attorney, in the name of the people, and upon the relation of individuals, has not been questioned in this case; both parties being desirous of obtaining a decision of the case upon the merits. Assuming, therefore, the right to bring the bill in this shape, but without intending to preclude the question in other cases, or to have this assumption drawn into precedent, we shall proceed to consider the merits of the case.

Waiving the question whether the resolution of the board in reference to the removal of the county seat was passed by the requisite majority of the Board of Supervisors, or

whether the statute requires a majority of two - thirds of all the members elected — a point we deem it unnecessary to decide — we are to inquire what was the nature and effect of the resolution, and whether it has been properly carried into effect.

The resolution is not a direct and absolute determination to remove the county seat, or an absolute designation of the place to which it should be removed. It is expressly made subject to the proviso that " suitable guarantees " should be given for the erection of the necessary buildings for county purposes, free of cost to the county, and that said guarantees should be given within ninety days from that date. Being thus conditional, it could not operate as an absolute resolution for removal or for the designation of the place, until the condition specified in the proviso should be fulfilled. This proviso was an essential part of the resolution, and can no more be rejected than any other portion of the resolution. For though the board had power to adopt a resolution for such removal and designation, they had also the power to refuse it absolutely, or until the circumstances, and the inducements offered, should, in their opinion, render it expedient. And a guarantee for the erection of the necessary buildings, without cost to the county, was a very proper subject of consideration, in determining upon the expediency or propriety of the removal — a consideration which in its nature, was calculated to influence the minds of the members in voting for or against the resolution. No one can be authorized to say that it did not have that effect, or that the resolution could have passed by the requisite majority, without the proviso.

The authority to submit the question to the electors rested upon this resolution. Whether it would have been competent to have submitted the question to the vote of the electors in this conditional form, we are not called upon to decide, as there is no pretence that it was

thus submitted. So far as appears from the record, as well as from the statements of the counsel upon the argument, the question of removal actually submitted to the vote of the electors was without any condition whatever. We think it entirely clear that the question submitted to the electors should have been the same as that voted upon by the board. Here the resolution of the board was conditional; the vote of the electors absolute.

But it is urged that this resolution had in the meantime become absolute by the adoption of the resolution of the next day, and the action of the committee under it, which, it is claimed, operated as a performance of the condition prior to the vote by the electors. Whether, if it had thus become absolute in the meantime, this would have cured the defect, we express no opinion, because, in our view, the record does not show that the resolution had become absolute by the performance of the condition. The condition or proviso was somewhat vague and indefinite. It was that "suitable guarantees" should be given. Who was to judge whether any guarantees were suitable. This was clearly a question which this resolution left for the future decision of the board, unless, perhaps, by a subsequent resolution, passed by a two-thirds majority, they had determined to leave its decision to some other person or persons, which possibly might have been competent. For having the power to pass the resolution for a removal, etc., without any condition, they might, perhaps, have passed it subject to the condition that a guarantee should be given, which should be satisfactory to any person they might choose to name. But in such a case, the second resolution would operate thus far to modify the original resolution. But the resolution adopted by the board on the next day, for the purpose of carrying the proviso of the original resolution into effect, appointed the chairman and four other members a committee "to examine and, if found satisfactory, to approve

the bond required to be given on account of the removal of the county seat "— in other words, to determine whether the guarantees that should be offered *were* "suitable." This resolution does not appear to have been passed by a two-thirds majority of the board, and consequently can not have the effect to modify the effect of the original resolution passed, and required to be passed by such two-thirds majority. Hence, this second resolution referring the matter to a committee, must stand, if it can stand at all, as a mere naked delegation of the authority of the board, given by a simple majority. This was not a committee appointed for the mere purpose of inquiring and reporting to the board for its future action, but for the purpose of definitely and finally exercising upon this question the whole power possessed by the board itself. We think it clear that it was incompetent for the board thus to delegate this power; (*Hascall et al. v. Madison University*, 8 *Barb.* 174 *Thompson v. Schermerhorn*, 2 *N. Y.* 92), and that no action which the committee could take under the resolution could determine the question of the sufficiency of the guarantees under the original resolution. Hence, notwithstanding the approval and acceptance of the bond by them, the original resolution remained still conditional as when it was first passed, and that nothing short of a resolution, passed by a two-thirds majority of the board, could decide the question, or dispense with the condition. There was no subsequent action of the board upon the question.

Hence, the resolution for removing the county seat, or designating the place to which it was to be removed, remained conditional at the time the question was submitted to the vote of the electors without any condition. The vote of the electors was, therefore, unauthorized, and of no validity.

The decree of the court below, sustaining the demurrer

and dismissing the bill, must be reversed, and the defendants have leave to answer.

The record must be remitted to the court below for further proceedings.

The other Justices concurred.