HENRY NAEGELY v. THE CITY OF SAGINAW ET AL.

[ See 94 Mich. 240.]

*Municipal corporations—Council proceedings—Bridge bonds—Right
to issue—Conditions precedent.*

1. A corporate act which can only be taken by a majority vote of
   all of the aldermen elect cannot be rescinded except by a like
   vote; citing *Stockdale v. School-District,* 47 Mich. 226; *Whitney
   v. Village of Hudson,* 69 Id. 189.

2. A resolution authorizing the issue of bonds in a given sum is
   not rescinded by a subsequent resolution limiting the *present*
   issuance to a less amount.

3. A city charter provided that the common council should pre-
   scribe the rules for the transaction of its business and for its
   proceedings, which rules should have the effect of law.
   Among the rules adopted was one providing that no resolu-
   tion or proceeding imposing taxes or assessments, or requiring
   the payment, expenditure, or disposition of money, or creating
   a debt or liability therefor, should be passed at the same
   meeting at which it was introduced, if objection should be
   made by any member. The council, proceeding upon the
   theory that a prior resolution had limited to $90,000 the present
   issue of bridge bonds theretofore duly authorized in the sum
   of $200,000, adopted a resolution providing for the issue of
   $165,000 of such bonds, and directing the manner of their dis-
   position. And it is held that said resolution was not new
   business, within the prohibition of the rule.

4. An objection that a direction by the common council of a city
   to the mayor, controller, and clerk to accept bids and make
   sale of bonds is an illegal delegation of power is sufficiently
   answered by the fact that, within two days after a bill was
   filed by the objectors to restrain the issuance of the bonds, the
   officers named reported their action to the council, and the
   same was ratified and confirmed by that body.

5. The charter of the city of Saginaw, which makes the declara-
   tion by the common council of the necessity of public im-
   provements, the cost, or any portion of the cost, of which is
   to be assessed upon the locality of the improvement, essential
   as preliminary to the making of the same, does not con-

template that, before a tax shall be levied or bonds issued to provide the fund out of which the proportion of the cost to be borne by the city is to be paid, such necessity shall be first declared.

6. The state of the record is held not to warrant the conclusion that the Emerson bayou, adjoining the Saginaw river in the city of Saginaw, at the point where it is sought to be crossed by a bridge which the city desires to construct across said river, is navigable for boats or vessels of 15 tons burden or more, within the meaning of How. Stat. § 495, which requires the permission of the board of supervisors of a county to the construction of a bridge over a river which is thus capable of navigation.

7. The Secretary of War, in response to the application of a city for his approval of the location and plans of a bridge which the city desired to construct over a navigable river, forwarded to the city engineer an instrument in duplicate, which, after reciting the act of Congress governing the matter, certified that the map of location and plans of the bridge, attached to the instrument, had been approved by the Secretary of War, subject to the condition that a government engineer should supervise the construction of the bridge. The instruments were accompanied by a request that, when said condition had been accepted by the mayor of the city, they should be returned to the war department for completion, and below the blank left for the signature of the Secretary of War appeared an acceptance of said condition, ready for the signature of the mayor. And it is held that, conceding that the approval of the Secretary of War was a condition precedent to the issuance by the city of bonds to raise money with which to construct the bridge, the correspondence was a sufficient guaranty that his formal approval would follow the city's acceptance of the condition as to supervision of the construction of the bridge to warrant the issuance of the bonds.

8. Where an issue of bonds is authorized for the purpose of raising money with which to construct a bridge and to procure the right of way therefor, it is no objection to the issuance of such bonds that the right of way has not been obtained.

Appeal from Saginaw.   (Gage, J.)   Submitted on briefs April 13, 1894.   Decided September 25, 1894.

Bill to restrain the issuance of certain bridge bonds. Complainant appeals.   Decree affirmed.   The facts are

stated in the opinion, and in *Tillotson v. City of Saginaw,* 94 Mich. 240.

*Holden & Bradt,* for complainant.

*Charles S. Smith* (*Benton Hanchett,* of counsel), for defendants.

McGRATH, C. J.     The bill in this case was filed to restrain the issue of bonds for the construction of bridges. The resolutions ordering the issue, and the authority of the city in the premises, were passed upon in *Tillotson v. City of Saginaw,* 94 Mich. 240.     Other questions are raised which were not presented in that case, and subsequent action of the common council is relied upon.

In October, 1891, the city obtained permission from the board of supervisors of Saginaw county to construct three bridges across the Saginaw river.   On February 23, 1892, the council adopted resolutions proposed by Ald. Rellis, which are set forth in the opinion in the Tillotson case, on pages 242 and 243, providing for the issue of bridge bonds in the sum of $200,000, of which $125,000 were to be issued under section 25, tit. 5, of the charter,[1] and $75,000 under Act No. 321, Local Acts of 1891.   Appended to each of said resolutions was a further resolution fixing the amount of each bond; the date thereof; the rate of interest, and when payable; where principal and interest should be made payable; the time when said bonds should mature and fall due,—and directing that the bonds be made, executed, issued, negotiated, and sold by the mayor, controller, and clerk at the best obtainable price therefor, but not below their face or par value.

On April 5, 1892, the council had adopted resolutions for the issue of Genesee street improvement bonds in the

---

[1] Act No. 455, Local Acts of 1889.

sum of $30,000. After the decision in the Tillotson case, and on January 23, 1893, resolutions were presented to the council by Ald. Reynolds, and adopted, as follows:

"*Resolved*, by the common council of the city of Saginaw, that the mayor, controller, and city clerk of said city be and they are hereby instructed *to limit the present issuance and sale of the bridge bonds ordered by 'the resolutions of Ald. Rellis*, adopted February 23, 1892, found on pages 652 and 653 of the C. C. P. for the years 1891 and 1892, to the amount of $90,000. * * * * *

"*Resolved further*, that the mayor, controller, and city clerk be and they are hereby instructed to limit the present issuance and sale of the bonds known as 'Genesee Street Improvement Bonds,' ordered by the resolution of Ald. Cadagan, adopted April 5, 1892, found on pages 711 to 712 of C. C. P. for the years 1891 to 1892, to the sum of $20,000."

On January 25, 1893, the controller issued a circular asking for proposals for the bonds. At the regular meeting of the council held January 30, 1893, Ald. Smith presented the following resolutions:

" *Resolved,* that the resolutions offered by Ald. Rellis, and found on pages 652 and 653 of the common council proceedings for the years 1891 and 1892, and adopted by the common council February 23, 1892, directing the raising of $125,000 for the purpose of constructing a bridge across Saginaw river and Emerson bayou, on a line of Court street extended easterly to the street authorized November 2, 1891, by the council, etc.; also a bridge across said river on a line of Maple street, in the village of Carrollton, extended into the First ward of the city of Saginaw; and also a bridge across said river east from Perry street, in said city,—and to procure the right of way for said bridges, and authorizing the issuing of the bonds of the city as a means of raising said amount for said purposes, etc.; and also directing the borrowing of $75,000 to be used in defraying the expenses of procuring the right of way for and approaches to and the building of three bridges across said river for said city, as provided by Act 321 of the Laws of Michigan, approved May 8, 1891, etc., and authorizing the issuing of the bonds as a

means of borrowing said sum for said purposes, etc.,—be and the same are hereby rescinded.

"*And resolved further*, that the mayor, controller, and city clerk be and they are hereby directed to not make, execute, issue, negotiate, or sell any such bonds whatever."

When the reading of the resolutions was commenced, eight of the aldermen present retired. The journal of the council records said resolutions as having been adopted by a vote of 14 ayes and 5 nays. The journal also shows that a motion to reconsider said resolutions was made, and laid upon the table.

Thereupon a call for a special meeting of the common council was signed by 11 aldermen, and a special meeting was held January 31, 1893, at which 28 aldermen and the mayor, who is *ex officio* a member of the council, were present. At said meeting the mayor presented a veto of the action of the council in adopting the resolutions last aforesaid. Thereupon, the following resolution was presented by Ald. Achard:

"*Resolved*, that the resolution offered by Ald. Smith, at the regular meeting held on Monday evening, January 30, 1893, rescinding the resolutions adopted February 23, 1892, providing for the issuing of bonds in the sums of $125,-000 and $75,000, for the purpose of building three bridges across Saginaw river, be and the same is hereby rescinded and annulled."

The resolution was adopted by a vote of 16 ayes to 13 nays.

On February 6, 1893, at a regular meeting of the common council, Ald. Johnson presented the following resolution:

"*Resolved*, by the common council of the city of Saginaw, that the mayor, controller, and city clerk be and they are hereby instructed to proceed with the issuance and sale of the $90,000 of bridge bonds referred to in the resolution of Ald. Reynolds, adopted January 23, 1893, found on C. C. P. page 615, in accordance with the pro-

visions of section 25 of title 5 of the charter, as required by the first resolution of Ald. Rellis, adopted February 23, 1892, and found on page 652, C. C. P. 1891 and 1892, and that they proceed with the issuance and sale of the bridge bonds in the sum of $75,000, in accordance with Act 321, Local Acts of 1891, as required by the second resolution of Ald. Rellis, adopted February 23, 1892, and found on page 653, C. C. P. 1891 and 1892, and that they accept the bid of the highest responsible bidder for the bridge and Genesee street improvement bonds, provided the said bid is not below the par value of said bonds."

Objection was made to the consideration of the resolution, but the mayor ruled that the resolution was not new business, and that one objection did not postpone its consideration. An appeal was taken from the ruling of the mayor, and the chair was sustained by a vote of 20 to 9. The resolution was then adopted by a vote of 16 to 14. On February 11 the bids for the bonds were opened, and this bill was filed on the same day. On February 13 the controller and clerk reported their action upon the bids to the council, and such action was approved.

Respecting these resolutions complainant's counsel contend:

1. That the resolution of Ald. Reynolds not only limited the entire amount of bridge bonds to be issued to $90,000, but that it in effect entirely annulled the former resolutions of Ald. Rellis.

2. That, assuming that the Reynolds resolution limits the entire issue of bridge bonds to $90,000, it is invalid, because it does not provide that they shall be issued under the charter, or under Act No. 321, Local Acts of 1891.

3. That the resolution of Ald. Johnson was ineffectual to authorize the issuance of $165,000 bridge bonds, because it was irregularly adopted, inasmuch as it was not laid over a week when objected to by Ald. Nauer, and further because it only fixes the dates of bonds, their maturity, denominations, and rate of interest, by reference to the Rellis resolutions, which, it is claimed, had been annulled.

4. That the original resolutions of Ald. Rellis were rescinded by the resolution of Ald. Smith.

5. That the mayor had no authority to veto the resolution of Ald. Smith.

6. That the action of the council at the special meeting held January 31, when they attempted to rescind the resolution of Ald. Smith, was ineffectual and void, because the special meeting was not regularly called.

The resolution of Ald. Reynolds does not purport to rescind the Rellis resolutions. It, in express terms, instructs the mayor, etc., "to limit the *present* issuance and sale." The second objection made to it clearly shows that it was not intended as a substitute for the Rellis resolutions. It is evident, also, that the limitation was intended to apply to the issue of $125,000, under the first of the two Rellis resolutions. The preamble contemplates a necessary expenditure of $165,000, exclusive of the Genesee street improvement, which could only be met by the limited issue of $90,000, and the issue of $75,000 under the second Rellis resolution. It is made clear by the Johnson resolution that this was the understanding of the council respecting the Reynolds resolution.

Under the provisions of section 6, tit. 3, of the charter, the resolutions authorizing the issue of bonds required a majority vote of all the members elect of the council. A corporate act which can only be taken by a majority vote of all the aldermen elect could not be rescinded except by a like vote. *Stockdale v. School-District*, 47 Mich. 226; *Whitney v. Village of Hudson*, 69 Id. 189, 202. The resolution offered by Ald. Smith received but 14 votes, and did not prevail. It is unnecessary, therefore, to consider the veto power of the mayor, or the validity of the action taken at the special meeting held January 31.

The resolution of Ald. Johnson was not new business, in any sense. In any event, its only office was to redirect what had already been ordered.

It is next urged that the direction given to the mayor, controller, and clerk was an illegal delegation of power.

It is sufficient answer to say that, within two days after this bill was filed, those officers reported their action to the council, and the same was ratified and confirmed by that body.

The next objection is that the common council has not declared the construction of the bridges in question to be a necessary public improvement. Section 1 of title 6 of the charter provides that—

"The common council of the city of Saginaw shall have full power to lay out, open, widen, alter, close, fill in or grade, vacate or abolish, any highway, streets, avenues, lanes, alleys, public grounds. or spaces in said city, whenever they shall deem it a necessary public improvement."

Section 2 is as follows:

"Whenever the common council shall deem any such improvement necessary, they shall so declare by resolution."

The issue of these bonds is authorized by the act quoted at length in the Tillotson case, and by section 25 of title 5 of the charter, also quoted in that opinion. Title 6 relates to "Street and Public Improvements." Section 15 provides that—

"The term 'public improvement,' as used in this act, shall be held and construed to include not only those set out and recited in the first section of this title, but the stumping, ditching, and grading of all public streets, highways, lanes, and alleys, the construction of plank roads, the laying of pavements of wood or stone, including the crosswalks, flagging or macadamizing, with broken or pounded stone, of the streets or roadways of said city, the draining and filling of all the low lands and lots, and the general betterment of all streets, highways, lanes, alleys, parks, public places and grounds within said city."

Title 5 relates to "Taxes, Funds, Revenues, and Expenditures."

The declaration of the necessity is made essential as preliminary to public improvements the cost, or any por-

tion of the cost, of which is to be assessed upon the locality of the improvement.    Title 6 contemplates that the cost, or a part of the cost, of the public improvements shall be assessed upon the locality, and it also contemplates that a portion of such cost may be paid from the city treasury. The charter does not contemplate that, before a tax shall be levied to provide the fund out of which the proportion of the cost to be borne by the city is to be paid, the necessity for the various improvements shall be first declared. Provision is made in the annual budget for these funds upon estimates, and without reference to particular improvements, and in the absence of any declaration of necessity for the improvements in which the moneys raised are to be expended.    The right to raise, by tax or otherwise, the necessary funds for public improvements, is not conditioned by the charter upon a prior declaration of the necessity for the improvements.

It is next insisted that the consent of the Secretary of War to the construction of the bridges had not been obtained; that the board of supervisors had not consented to the bridging of a bayou, which it was necessary to cross; and that the rights of way for the approaches to the bridges had not been obtained.    It appears that measures had been taken to obtain the consent of the Secretary of War to the construction of the bridges in question, and on February 5, 1892, there had been sent to the city engineer, from the department at Washington, a communication as follows:

"There are sent you herewith instruments in duplicate, indicating approval by the Secretary of War of the plans for three bridges to be built across Saginaw river on the extensions of Maple street, Court street, and Center street, in the city of Saginaw, Mich.    When the conditions of these instruments have been accepted by the mayor of 'the city of Saginaw, please return all the copies to this office for completion by the Secretary of War."

The inclosures were formal instruments for execution by the city, and contained the following recitals and certificate:

"*Whereas*, by section 7 of an act of Congress, approved September 19, 1890, entitled 'An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes,' it is declared that it shall not be lawful to construct, by virtue of legislative acts of the state, any bridge not already authorized by law over navigable waters of the United States wholly within the limits of said state, without the approval of the Secretary of War of the location and plans of such bridge;

"*And whereas*, the city of Saginaw, Michigan, has authority, under an act of the Legislature of the State of Michigan, to construct a bridge over the Saginaw river, on the extension of Court street, in said city and State, and has submitted a map of the location and plans of the same:

"*Now, therefore*, this is to certify that the map of location and plans of said bridge, which are hereto attached, have been approved by the Secretary of War, subject to the following conditions: That the engineer officer of the United States army in charge of the district within which the bridge is to be built may supervise its construction in order that said plans shall be followed.

"Witness my hand this————day of————, 1892.

"————————, Assistant Secretary of War.

"The conditions of this instrument are hereby accepted by the city of Saginaw, by————————, its mayor, thereunto lawfully authorized, this————day of February, 1892."

It further appears that in October, 1891, the board of supervisors of the county granted permission to construct the bridge in question across the Saginaw river, but in the petition to said board no mention was made of the Emerson bayou, although, to make the bridge available, it would necessarily have to cross the bayou. There are other bridges across the Saginaw river in this vicinity, and one bridge across the bayou; and, about 800 feet further up, two railroad tracks cross upon trestles. There are no

docks south of the bridge, and the depth of water in the center of the bayou at the crossing point, according to soundings made in February, 1893, was less than four feet. The testimony tends to show that the water in the bayou has been gradually receding for years. The state of this record does not warrant the conclusion that this bayou at this point is "navigable for boats or vessels of 15 tons burden or more," under the statute. How. Stat. § 495.

It will be observed that under the federal statute, in a case where the legislature of a state authorizes the construction of a bridge over navigable waters wholly within the limits of such state, the approval by the Secretary of War of the location and plans of such bridge is made requisite, while in other cases permission to bridge is an essential prerequisite. Even though it be conceded that the approval of the Secretary of War was a condition precedent to the issuance of the bonds, the correspondence was, we think, a sufficient guaranty that the formal approval would follow the city's acceptance of the condition, to warrant the city's action.

Respecting the approaches, one of the very objects of the issuance of the bonds was to provide the funds necessary to procure the rights of way and approaches.

The decree of the court below dismissing the bill is affirmed, with costs to defendants.

The other Justices concurred.