BEACH *v.* KENT.[1]

1. PARLIAMENTARY LAW—COUNTIES— SUPERVISORS—RECONSIDERATION OF ACTION.

A board of supervisors which, acting under section 2484, 1 Comp. Laws, has adopted Cushing's Law and Practice of Legislative Assemblies as its rule of parliamentary procedure, cannot reconsider an action formally taken except upon the same terms that the action itself was taken, and hence a motion to reconsider a motion by which a circuit judge was granted extra compensation must be by vote of a majority of all the members elect.   Section 2476, 1 Comp. Laws.

2. JUDGES—COMPENSATION—EXTRA ALLOWANCE—CONSTITUTIONAL LAW.

The Constitution, by providing in art. 6, § 6, that the circuit judges in certain circuits shall receive such additional salary

---

[1]Rehearing denied January 23, 1906.

as may from time to time be fixed by the board of supervisors merely authorizes the board to fix the salary of all the judges of the circuit at the same amount, and does not authorize granting additional compensation to a single judge because of added duties performed by him during the illness of his associate.

Mandamus by Emmet L. Beach, circuit judge of Saginaw county, against Fred W. Kent, county treasurer, and others, to compel the execution, delivery, and payment of a certain county order. Submitted November 14, 1905. (Calendar No. 21,412.) Writ denied December 22, 1905.

*John F. O'Keefe* (*George W. Weadock* and *James H. Davitt*, of counsel), for relator.

*De Vere Hall*, for respondents.

Blair, J. The petitioner is one of the circuit judges in and for the county of Saginaw, and as such, on October 17, 1905, presented to the board of supervisors for that county the following petition, viz. :

"To the Honorable the Board of Supervisors of the County of Saginaw.

"*Gentlemen:* Your petitioner respectfully represents unto your honorable body that he is one of the circuit judges in and for Saginaw county, and has been since January 1, 1900. That the late Judge Snow was duly elected and qualified at the same time, and each continued to work and perform the duties of said office up to the time when Judge Snow was taken ill and unable to perform his duties upon the bench. That after his illness I performed all of the work up to the time of the appointment of the Honorable William G. Gage, who was appointed some time after Judge Snow's death. For the extra work performed by me as such judge of said county I believe that I am entitled to extra compensation, and believe such services are worth the sum of $2,500, and that, pursuant to section 6 of article 6 of the Constitution of the State of Michigan, your honorable body has a right to and can pay the additional compensation. Said section, among other things, provides that in the county of Sagi-

naw the board of supervisors may, in addition to the salary provided by the Constitution, allow such additional salary as from time to time may be fixed and determined by the board of supervisors of said county.

"Respectfully submitted,
"E. L. BEACH."

On the same day that the petition was presented the board, by vote of 32 to 13, adopted the following resolution, viz.:

"*Whereas,* Circuit Judge E. L. Beach has petitioned this board for extra compensation in the sum of $2,500 for work done by him during the illness of the late Hon. Byron A. Snow; and

"*Whereas,* Nearly all of the members of the Saginaw county bar and court officers have also filed a petition claiming that the amount asked for by Judge E. L. Beach is legal and just, and that the board of supervisors pay him the sum of $2,500; therefore be it

"*Resolved,* By the board of supervisors of Saginaw county, that Judge E. L. Beach be paid the sum of $2,500 for the extra work so done by him, and that the county treasurer be, and he hereby is, authorized and directed to pay the said sum of $2,500 to the said Judge E. L. Beach out of the general funds of the county."

On October 18th a motion was made:

"That the vote by which the resolution of Supervisor Ederer (relative to extra compensation of Judge Beach) was adopted at yesterday's session be reconsidered."

Twenty-five votes were cast for this motion, and 22 against it. The chairman declared the motion carried. Immediately thereafter the following resolution was adopted by a vote of 31 to 16, viz.:

"That the resolution of Supervisor Ederer relative to extra compensation for Judge Beach be referred to the committee on finance and county affairs."

On Friday, October 20th, said committee on finance and county affairs presented the following report thereon:

"TO THE HONORABLE THE BOARD OF SUPERVISORS OF THE COUNTY OF SAGINAW.

"*Gentlemen:* Your joint committees on finance and

county affairs, to whom is referred the communication of Hon. Judge Beach for extra compensation for work performed during the illness of the late Hon. Judge Snow, have had the same under consideration and would respectfully refer the same back to your honorable board without recommendation."

Thereupon the following resolution was presented:

" By Sup. Schlickum : That the report be received and action thereon indefinitely postponed."

Which resolution was lost by a vote of 21 ayes to 26 nays, and thereupon the following motion was made:

" By Sup. O'Keefe : That the report be received and filed."

Which motion was duly adopted, and thereupon the following resolution was presented:

" By Sup. Ederer : *Resolved,* That this board allow Circuit Judge Emmet L. Beach the sum of $1,500 as full compensation for the extra services performed by him during the illness of the late Hon. Byron A. Snow, and hereby authorize and direct the proper officers of this board to draw and execute an order upon the county treasurer payable to Emmet L. Beach for $1,500, and upon presentation the treasurer of this county is hereby authorized and directed to pay the same to the holder of said order upon presentation out of any moneys in his hands credited to the general fund."

Thereupon the following motion was presented:

" By Sup. Bell : That the resolution be adopted."

On objection, the resolution was laid over for one day. The succeeding day was the 12th day of the October session of said board, held on October 21, 1905, and at said day's session no action was taken upon such claim or resolution.

The board of supervisors of Saginaw county is composed of 51 members. The judges of Saginaw county circuit court being disqualified, the relator has applied to this court for a writ of mandamus to compel Fred E. Gibson, as chairman of the board, and Emerson P. Whaley, as

clerk of the board, " to make, execute, and deliver to your petitioner an order upon the treasurer of the county of Saginaw for the sum of $2,500, payable to the order of your petitioner, as authorized in said resolution of Supervisor Ederer, and also addressed to and commanding Fred W. Kent, as treasurer of the county of Saginaw, to pay said order." Relator contends that the action taken by the board upon the motion to reconsider was ineffective, for the reason that the original resolution could not be reconsidered except by a vote of a majority of all the supervisors elected, and that the board had authority to adopt the resolution under section 6 of article 6 of the Constitution. Respondents contend that the motion to reconsider was legally carried and that the Constitution does not authorize the action originally taken.

Section 2476, 1 Comp. Laws, provides:

" A majority of the supervisors of any county shall constitute a quorum for the transaction of the ordinary business of the county, and all questions which shall arise at their meetings shall be determined by the votes of a majority of the supervisors present, except upon the final passage or adoption of any measure or resolution, or the allowance of any claim against the county, in which case a majority of all the members elect shall be necessary."

Section 2484 provides:

" The several boards of supervisors shall have power and they are hereby authorized at any meeting thereof lawfully held: * * *

" *Seventeenth.* To establish such rules and regulations in reference to the management of the interest and business concerns of such county and in reference to the mode of proceeding before such board as they shall deem necessary and proper in all matters not especially provided for in this act or in some law of this State," etc.

Rules 23 and 29, as adopted by the board of supervisors of Saginaw county and in force at the time the action in question was had, read as follows:

"(23) No motion for reconsideration shall be in order unless on the same day or the day following that on which

the decision proposed to be reconsidered took place, nor unless one of the side which prevailed shall move such reconsideration.

"(29) The rules of parliamentary practice, comprised in Cushing's Law and Practice of Legislative Assemblies shall govern the board in all cases to which they are applicable, providing they are not in conflict with these rules or with the laws of the State of Michigan."

It is not claimed that there is any other rule regulating the procedure on motions for reconsideration. Rule 1266 of Cushing's Law and Practice of Legislative Assemblies is as follows, viz.:

"It is usual in our legislative bodies, and in other deliberative assemblies of a permanent character, to regulate by a special rule the time, manner, and by whom a motion to reconsider may be made; as, for example, that it shall be made only on the same or a succeeding day, or within a given number of days; by a member who voted with the majority; or at a time when there are as many members present as there were when the vote was passed; but, where there is no special rule on the subject, a motion to reconsider may be made at any time, or by any member, precisely like any other motion, and subject to no other rules."

Respondent contends that the adoption of a motion to reconsider is not "the final passage or adoption of any measure or resolution, or the allowance of any claim against the county," within the meaning of the statutory provision quoted; that such action is not final or complete; that it merely brings the subject-matter of the original action again before the acting body for its final disposition, and that the provisions of the statute, rules, and legislative manual quoted explicitly authorize the ruling of the chairman that the motion was carried. Relator claims, on the other hand, that the decisions of this court have established that in such a case the motion requires for its passage a majority of all the supervisors elect, citing *Stockdale* v. *School District*, 47 Mich. 226; *Whitney* v. *Village of Hudson*, 69 Mich. 189; *Naegely* v. *City of Saginaw*, 101 Mich. 532; *People* v. *County Officers of*

*St. Clair*, 15 Mich. 85; *Peck* v. *Board of Sup'rs of Berrien Co.*, 102 Mich. 346.

There is much force in the reasoning of respondents' counsel; but we think, as contended by counsel for relator, that the question is concluded by the decisions of this court. In *Whitney* v. *Village of Hudson*, supra, the precise question was passed upon. The common council in that case, on April 24, 1882, had passed a resolution to pave Main street by a two-thirds vote, as required by the charter. On the 1st day of May following it was attempted to reconsider and rescind this resolution. Of this action Mr. Justice CHAMPLIN, speaking for the court, says:

"After passing the original resolution of April 5 and the amendatory resolution of April 17, 1882, the common council on the 1st day of May, 1882, reconsidered the vote of April 24, 1882, adopting the resolution by a vote of three in favor, and two against. A motion was then made that the resolution to pave West Main street be rescinded, which was lost by a vote of two in favor and three against the motion. No vote was ever afterwards taken to pass or adopt the resolution of April 24th, but the council proceeded as if it had never been reconsidered. This resolution lay at the foundation of the whole proceedings to pave Main street, and if it was reconsidered, and not afterwards passed, the proceedings to assess the expense must fail for that reason. * * *

"It is claimed, also, by the defendants' counsel, that the vote to reconsider was not carried; that where, by statute, a vote of two-thirds is required to pass a resolution, it cannot be reconsidered or rescinded, except by a two-thirds vote. This was declared to be the law in the case of *Stockdale* v. *School District*, 47 Mich. 226, where the motion was to rescind. And, where the body has adopted no rule regulating the practice upon motions for reconsideration, it is not perceived why the same ruling should not apply.

"The law requires a vote of two-thirds of the members of the body to pass the act in the shape it is in when the vote is taken. Two-thirds are satisfied with it as it then reads, and no reason exists why a majority less than two-thirds can bring the resolution again before the body for

142 MICH.—23.

the purpose of changing its features or postponing action.
There should be some stability in legislative action which
is passed under the requirements of a law calling for a
vote of two-thirds of its members, and it should remain as
the two-thirds have passed it, unless the same number de-
sire a further consideration of the measure."

It becomes necessary, therefore, to consider whether
the constitutional provision relied upon by relator author-
ized the action taken.

Section 6 of article 6, so far as it relates to the question
now before us, provides:

"The legislature may provide for the election of more
than one circuit judge in the judicial circuit * * * in
which the county of Saginaw is or may be situated. * * *
And the circuit judge or judges of said circuits, in addi-
tion to the salary provided by this Constitution, shall re-
ceive from their respective counties such additional salary
as may from time to time be fixed and determined by the
boards of supervisors of said counties."

The meaning of the words "additional salary" is the
question of prime importance. Was it the intention of
the people, in adopting this amendment, that the boards
of supervisors in the designated counties might reverse
the usual course of proceeding in such cases and fix and
determine the additional salary at the end of the term to
be compensated for? Can they fix one salary for one cir-
cuit judge and another and different salary for the other
circuit judge in Saginaw county? In the county of
Wayne, can the board of supervisors from time to time
consider the amount of work done by each and the rela-
tive merits of the several circuit judges, and provide a
different salary for each of the six for the period which
has then elapsed, or give additional salary to one and
none to the other five? In other words, does the salary
attach to the man or to the office? In the case before us,
the board of supervisors has not attempted to fix a salary
for the office of circuit judge, but has attempted to com-
pensate one circuit judge for doing more than his share of
the work. We are satisfied that this action is not war-

ranted by any proper construction of the constitutional provision in question. We think that the salary must be fixed and determined for the office, and not for the particular incumbent. The powers and duties of the two circuit judges in Saginaw county are fixed and determined by the Constitution and general laws of the State, and are identical. The power of the board of supervisors is limited, under the constitutional provision, to fixing, from time to time, if they see fit, an additional salary for the office of circuit judge. It is the theory of our Constitution and laws that each of the circuit judges will usually perform all of the duties of his office, and provision is made for inability so to do, and the constitutional provisions for salaries must be construed with reference to this theory.

Act No. 75 of the Public Acts of 1889, providing for an additional judge in the Tenth judicial circuit, provides (section 279, 1 Comp. Laws):

"The two judges of said circuit shall have equal and co-ordinate powers and duties, and one of them shall constitute a quorum for the transaction of business. The judge holding office at the time when the judge elected under this act shall enter upon the duties of his office shall assign and apportion from time to time, by order on the journal of the court, in general terms, the business of said court between them, for the succeeding calendar year. The other judge shall assign and apportion the business of the court for the next year; and in this manner the two judges and their successors shall alternate in assigning and apportioning the business of the court."

In section 281 it is provided:

"In case of the absence, illness, or inability from other cause of either judge to do any of the business assigned him, the same shall be done by the other."

Section 296 provides:

"That whenever the business of any of the circuit courts of this State has accumulated beyond the capacity of the judge or judges of such circuit court to properly dispose of, it shall be the duty of the governor of the State,

upon such showing of facts and request made by the presiding judge of such court, to designate a judge or judges of some other circuit or circuits in this State whose official duties will permit for the time being to hold court temporarily for such time or term as he may deem advisable and the judge or judges so designated shall perform the duties and hold court for such time or term in like manner and with like effect as they severally and respectively could have done if they had been elected to such office in the circuit where such duties as judge are performed."

Section 300 provides:

" That in case of the death, resignation, removal from the judicial circuit in which he was elected, inability to discharge the duties of his office, or from any cause, a vacancy shall exist in the office of circuit judge in any judicial circuit in this State, it shall be the duty of the governor, on being informed by the county clerk of any county in said circuit of such vacancy or inability, to designate any one of the justices of the Supreme Court, or any one of the circuit judges of the State, to hold such term or terms in such judicial circuit as he may direct; and the judge so designated shall perform the duties, and hold the term or terms in like manner, and with the like effect as he could do if he had been elected to such office in such judicial circuit, and until the vacancy shall be duly filled by appointment or election, as provided by law."

We think that the term "salary," as used in section 6 of article 6, has the same meaning as in section 1 of article 9, and contemplates "a fixed annual or periodical payment for services depending upon the time and not upon the amount of services rendered." *Benedict* v. *U. S.*, 176 U. S. 357, and cases cited; *Cane* v. *Mayor, etc., of City of New York*, 34 N. Y. Supp. 675. The salaries provided for under section 6 of article 6 are to be fixed and determined in advance, and, when so fixed, each of the circuit judges in the particular county is equally entitled thereto. In case of the illness or inability from other cause of his associate to perform his official duties, the statute required the relator to perform them; and if we are to hold that it is competent for the board of supervisors to compensate him for the performance of his stat-

utory duty, because the amount thereof is increased by the inability of his associate to perform his part, then it seems clear that we must also hold that the whole matter is committed to the unrestrained discretion of the board of supervisors, and that it may grant to one judge additional compensation whenever, in its judgment, he has earned it or deserves it. We think the constitutional provision is not subject to a construction which would produce such a result.

The petition is denied, but without costs.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.