In the Matter of FELIX C. BENVENGA et al., Respondents, against FIORELLO H. LA GUARDIA, as Mayor of the City of New York, et al., Constituting the Board of Estimate of the City of New York, Appellants.

Third Department, December 29, 1944.

568

*Ignatius M. Wilkinson, Corporation Counsel (James Hall Prothero* and *William S. Lebwohl* of counsel), for appellants.

*John W. Davis,* attorney (*William R. Meagher* of counsel), for respondents.

HEFFERNAN, J. The facts in this proceeding are not in dispute. Seventeen justices of the Supreme Court, nine residing in the first judicial district and eight in the second judicial district, instituted this proceeding under article 78 of the Civil Practice Act to compel appellants, constituting the Board of Estimate of the City of New York, to pay to them parts of their salaries withheld by appellants and hereafter to pay to each of them the same compensation paid to other justices of the Supreme Court resident in the districts involved.

Justices of the Supreme Court are State officers (Public Officers Law, § 2) and receive an annual salary from the State of $15,000. (Judiciary Law, § 142.) The State Constitution (art. VI, § 19) empowers the Legislature to fix the salary but contains a prohibition against any reduction in the salary of a justice during his term of office. Because of that fact their salary can be regulated only by the Legislature (*Freund* v. *Hogan,* 264 N. Y. 203, 204), and while the Legislature unquestionably may confer certain authority respecting that subject upon local bodies — as has been recognized in this State since 1852 (*People* v. *Edmonds,* 15 Barb. 529) — any action of such local body which transcends the authority granted to it by the Legislature is void.

Since the year 1852, in the case of the first district, and for many years in the case of the second, the City of New York, under authority granted by the State, has been paying to justices of the Supreme Court, resident in the first and second judicial districts, an annual compensation in addition to that paid by the State to all justices of the Supreme Court. (L. 1852, ch. 374, § 7; L. 1882, ch. 410, § 1108; Judiciary Law, 1909, § 143 as amd. by L. 1928, ch. 818; L. 1941, ch. 290, § 8.)

From 1909 to 1930 the amount so paid to each justice was $7,500 per annum. On June 13, 1930, the amount was increased to $10,000 per annum for each such resident justice.

On November 2, 1939, the Board of Estimate adopted a resolution purporting to reduce from $10,000 to $7,500 the amount which the City would pay to justices " hereafter appointed or elected, including those elected upon the expiration of their present terms of office ".

On January 16, 1941, the Board of Estimate adopted a further resolution purporting to provide that the resolution of November 2, 1939, " shall not apply to Justices of the Supreme Court assigned to the Appellate Divisions of the First and Second Judicial Districts during the period of such assignment."

Thereafter and effective July 1, 1942, the Board of Estimate adopted a resolution purporting to provide that the reduction

in the salaries of justices of the Supreme Court in the first and second judicial districts should not apply to any justices "who occupied their present offices by election on July 1, 1939," even though such justices might have been elected after November 2, 1939.

The foregoing resolutions, insofar as they affect the respondents, have been continued in force by resolution of the Board of Estimate and are included in the budget of the City of New York for the fiscal year 1943–1944.

In pursuance of the resolution of November 2, 1939, the Board of Estimate has paid to respondents additional compensation at the rate of $7,500 per year instead of the sum of $10,000 paid during the same period to other justices not within the classification named in the resolution. These payments have been received at the times, in the amounts and under the protests noted in the petition. During the same time the Board of Estimate, pursuant to the resolution effective July 1, 1942, has also paid to certain justices resident in the first and second judicial districts and elected or re-elected after November 2, 1939 the sum of $10,000 per year.

It appears that the Board of Estimate has not only discriminated between those justices elected prior to November 2, 1939, and those afterwards elected, but has also discriminated in the matter of compensation between justices elected after November 2, 1939. It also appears that the Board of Estimate has fixed the compensation of judges of the Court of General Sessions, of judges of the County Courts and of the surrogates of the Counties of New York, Bronx, Kings and Queens at the same total compensation then awarded to justices of the Supreme Court resident in the first and second judicial districts, viz., the sum of $25,000 per year; and that, while by the terms of such resolution of November 2, 1939, it was provided that the compensation to be paid to such judges and surrogates thereafter appointed or elected should be reduced by the sum of $2,500, nevertheless certain of the judges and surrogates elected or re-elected after November 2, 1939, have continued to receive total compensation at the rate of $25,000 per year, and that the surrogates of New York, Bronx, Kings and Queens Counties have been receiving total compensation in the same amount of $25,000 per year.

Respondents, deeming themselves aggrieved by the action of the Board of Estimate, instituted this proceeding. The New York Special Term of the Supreme Court declared the reducing resolution invalid and granted to respondents the relief for

which they applied. From that order appellants appealed to the Appellate Division of the Supreme Court, First Department. The latter court transferred the cause to our court for hearing and determination.

On this appeal appellants contend that section 143 of the Judiciary Law confers upon the City the power to reduce, as well as increase, the additional compensation payable to justices; and that the classifications set up by the three resolutions are reasonable, equitable and valid. As an affirmative defense appellants assert that the Statute of Limitations (Civ. Prac. Act, § 1286) bars any recovery by respondents for any period prior to July 1, 1944.

The same contentions were urged at Special Term and were there rejected by Mr. Justice WASSERVOGEL in a comprehensive and carefully considered opinion.

Respondents take the position that the justices of the Supreme Court — together — form one class and that the Legislature may subdivide that class on the basis of residence in certain judicial districts as well as on the basis of assignment to the Appellate Divisions, as it has done in sections 142, 143 and 144 of the Judiciary Law. But, they say, the Legislature having placed the justices resident in the first and second judicial districts in one class by authorizing the Board of Estimate to provide additional compensation for them, the Board has not the authority either (1) to discriminate between members of that class, or (2) to classify them further on the basis of time of election, place of assignment, or on any other basis.

Respondents also assert that while section 143 of the Judiciary Law grants to the Board of Estimate the option to provide additional compensation to justices of the Supreme Court resident in the first and second judicial districts it does not authorize the rescission or reduction thereof once the amount has been fixed, nor does it confer any authority to discriminate between justices as to such compensation.

By Laws of 1852, chapter 374, section 7, it was declared to be lawful for the Board of Supervisors of New York County to raise by tax upon said county and pay to justices of the Supreme Court resident in the first district '' such additional annual compensation as they may deem proper ''. That provision was carried into Laws of 1882, chapter 410, section 1108, with the exception that there the authority was conferred upon the Board of Estimate and Apportionment, and it was then carried into the Judiciary Law of 1909, as section 143 thereof, in the same form. By Laws of 1928, chapter 818, said section 143 was amended

so as to confer the same authority with respect to other judges, and by that amendment the section was made to read as follows: "The board of estimate and apportionment of the city of New York may provide for the raising by tax, and for payment to the justices of the supreme court resident in the first and second judicial districts, to the judges of the court of general sessions of the county of New York, to the surrogates and to the judges of the county courts of the counties within the city of New York, or to the justices, judges or surrogates of any of such courts, of such additional compensation as such board may deem proper. No increase, pursuant to this section in the total salary and compensation of the justices, judges or surrogates of any such court or courts over the salary and compensation received by them in the year nineteen hundred and twenty-seven shall require or effect an increase of the salary or compensation of the justices, judges or surrogate of any other of said courts, unless the board of estimate and apportionment shall so provide, any other statute to the contrary notwithstanding."

The section was further amended by Laws of 1941, chapter 290, section 8, but merely to substitute the words "board of estimate" for the words "board of estimate and apportionment."

Three things are to be noted: First, the provision is a permission given by the Legislature to a local body — the local body. "may provide" additional compensation. Second, the permission is to provide additional compensation to justices of the Supreme Court *resident* in the first and seconds districts *and* to judges of certain other courts "*or* to the justices, judges or surrogates of *any* of such courts". Third, the justices are spoken of collectively and as a class, not separately as individuals. The language is "to the justices, judges or surrogates of any such courts," not to "*any* of the justices, judges or surrogates of such courts". The compensation is provided for all holders of the specified offices.

No authority is granted to take away or reduce a compensation once fixed. No authority is granted to fix one compensation for one justice or judge or surrogate of one court and a different compensation for another justice or judge or surrogate of the same court. No authority is granted to fix one compensation for some justices of the Supreme Court resident in the first and second districts and a different compensation for other justices of the Supreme Court resident in such districts.

I entertain no doubt that the *Legislature* might take away or reduce a compensation once fixed by it, subject only to the

constitutional prohibition against diminishing a judge's compensation during his term of office (N. Y. Const. art. VI, § 19); and that the *Legislature* thus might provide for a reduction which would become applicable to new judges as they are elected, while continuing by force of the Constitution to pay the old rate of compensation to judges already in office when the statute affecting the reduction was enacted. Here we are not concerned with an act of the Legislature, but rather with a resolution of a local body; and the question does not involve legislative power, but the scope of an authority granted by the Legislature to a local board.

Further confirmation of our view that the Board is powerless to reduce the compensation of respondents is found in section 142 of the Judiciary Law.

Whatever the scope of the authority conferred upon the Board of Estimate by section 143, it is of course clear that such authority is subject to whatever limitation thereon is imposed by section 142 of the Judiciary Law. The words of section 142 with which we are now concerned are the following: " * * * Those justices elected in the first and second judicial departments *shall continue to receive* * * * such additional compensation as they are *now receiving* * * * . The provisions of this section *shall apply* to the justices *now* in office *and* to those *hereafter elected or* appointed."

The contention is made by the appellants that the words " now receiving " relate to the year 1926, when section 142 was first enacted; and as the compensation which the justices elected in the first and second departments were receiving from the City of New York in 1926, was $7,500 each (the sum of $10,000 each not having been fixed until June 13, 1930), section 142 does not prevent the reduction here in question.

If the provision in section 142, that the " justices elected in the first and second judicial departments shall continue to receive * * * such additional compensation as they are now receiving " stood alone, there might be some justification for the appellants' view that the words " now receiving " may not be taken as referring to a date later than the date of enactment or, more properly, the date of the last amendment, April 10, 1929. (L. 1929, ch. 464.) But that provision does not stand alone. It is followed by the sentence: " The provisions of this section shall apply to the justices now in office and to those hereafter elected or appointed ". It obviously is impossible for justices elected after April 10, 1929, to continue to receive the additional compensation they were receiving on that date, for

justices thereafter elected were not receiving any compensation as justices on that date. In only one of two ways, therefore, can there be compliance with the legislative command that this provision of section 142 shall apply to justices thereafter elected. One is to say that justices thereafter elected shall receive such additional compensation as justices previously elected were receiving on April 10, 1929. The other is to say that justices thereafter elected shall receive such additional compensation as justices previously elected receive. As between these two alternatives, we submit there can be no doubt that the latter is the only one which gives effect to all the words of the statute and which carries out its manifest intent.

The first alternative — the one which construes the statute as saying that the justices elected after April 10, 1929, shall receive such additional compensation as justices previously elected were receiving on April 10, 1929 — disregards entirely the idea of continuity which is clearly expressed in the words " shall continue ", and amounts to striking out the words " shall continue to receive " and substituting therefor the words " shall receive ". It also causes the words " those justices elected in the first and second judicial departments " to be taken distributively as between justices previously and thereafter elected, whereas the intent is plainly manifested that justices elected previously and justices elected thereafter are to be taken collectively as a single group, all embodied in the words " those justices elected in the first and second judicial departments " regardless of the time of election. The suggested construction also results in a discrimination between justices elected before and justices elected after April 10, 1929, whereas the intent that justices elected before and justices elected after that date shall be treated equally is clearly expressed in the sentence providing that the section shall apply to both.

The authority given by section 143 to provide for " such additional compensation as such board may deem proper " is a power to provide such additional compensation to " the justices of the supreme court *resident* in the first and second judicial districts " — not a power to provide one compensation for some of such justices and a different compensation for other of such justices — and under section 142 that compensation must be for justices elected after as well as those elected before April 10, 1929.

This, therefore, is a case in which the words " now receiving " cannot be given a meaning which makes them speak solely as of the date of the enactment. It is a case in which the dominant

intent of providing a nondiscriminatory and an unreduced compensation to all the justices elected in the first and second departments must be given effect. To that end, the statute is to be read as a continuing one which speaks anew each day of its existence and hence provides for a continuance of such additional compensation as is once fixed; and as the Board of Estimate fixed that compensation at $10,000 on June 13, 1930, the compensation so fixed must be applied to all justices alike, regardless of time of election. That is, it must be applied, in the very words of the section, to " the justices now in office and to those hereafter elected or appointed."

Provisions similar to section 143 of the Judiciary Law have been adopted in other States, and it has been held that they do not authorize either a rescission of a compensation once fixed or the fixation of one salary for one judge and another salary for another judge of the same court. (*Beach* v. *Kent,* 142 Mich. 347; *Freeney* v. *Brown,* 182 Ga. 818; *Petition of Breidenbach,* 214 Wis. 54; *Commonwealth* v. *Mann,* 5 Watts & Serg. [Pa.] 403; *Commonwealth* v. *Mathues, Appellant,* 210 Pa. 372.)

Where authority to decrease does not exist, the reduction of an increase is just as illegal as a reduction of the amount at which the judge's salary was originally fixed. (*Booth* v. *United States,* 291 U. S. 339 and cases there cited.)

Appellants rely principally on *Matter of Abrams* v. *La Guardia* (174 Misc. 421, affd. 262 App. Div. 724, affd. 287 N. Y. 717). That case involved reductions in the salaries of justices of the Municipal Court of the City of New York, which, as the court there held, " is not a constitutional court and accordingly the salaries of its justices may be reduced during their term of office by appropriate legislative action." It is not an authority for the appellants in the case at bar.

The defense of the Statute of Limitations is inapplicable here. (*Matter of Powers* v. *La Guardia,* 292 N. Y. 695.)

The learned counsel for respondents advances other reasons to sustain the order under review. In view of our conclusion it is unnecessary to discuss them.

The order appealed from should be affirmed, with fifty dollars costs and disbursements.

BREWSTER, J. (concurring.) I concur in the opinion of Justice HEFFERNAN. A near view of the question reduces it down to whether the delegation of power granted by the statute (Judiciary Law, § 143) carries with it the power which the defendants-appellants have assumed to exercise, viz., whether the grant of

power to provide for and pay the additional compensation includes the power to decrease it at all, once the expressed power has been exercised. The power to decrease has not been expressly given but the claim is that it was granted by implication in the express grant. That the questioned power is at least a limited one has been made plain. That is undisputed. It is limited by the constitutional provision that it may not apply as to an existing tenure of office (N. Y. Const. art. VI, § 19); and also by the statute (Judiciary Law, § 142) which in effect forbids, wholly, any decrease in what had been provided for as of the effective date of that enactment. (L. 1926, ch. 155, § 2.)

We are thus pointed to an inquiry as to whether in the enactment of said statutes (Judiciary Law, §§ 142, 143) the Legislature intended to include the implied power which is contended for, and, if so, whether it was constitutionally delegable. In the first phase of this inquiry it may be said at the outset that the very omission itself of any express power to effect a decrease in the additional compensation, once it was provided for, is of some significance. If it had been intended it would have been simple to record it. (*Hyatt* v. *Taylor,* 42 N. Y. 258, 262; *Wm. B. Astor* v. *Mayor et al.,* 62 N. Y. 567, 578; *Whitmore* v. *Mayor,* 67 N. Y. 21, 22; *Polhemus* v. *F. R. R. Co.,* 123 N. Y. 502, 507; *Matter of Jensen* v. *Southern Pacific Co.,* 215 N. Y. 514, 522; *Matter of Thomas,* 216 N. Y. 426, 429; *People* v. *Fitch,* 89 Hun 310, 312–313; *People ex rel. Smith* v. *Gilon,* 66 App. Div. 25, 27.) While this rule of construction is somewhat relative, it has a pertinency here in that we are dealing with a delegation of legislative power to a local body to act in a particular situation of State concern.

It has been said that the lineage of an act ofttimes illuminates the legislative intent. The history of legislation upon the general subject matter shows that over a long period of years there has been a general trend toward uniformity and a stabilized equalization in the fixing of salaries for higher judicial office. The wisdom of such policy is manifest. Prior to 1870 the legislation had been such that as of that year some judges of the Court of Appeals were receiving salaries of $6,000, and others $3,500, and some justices of the Supreme Court $5,000, and others $3,500. It seems to have been soon after that, however, that the trend toward uniformity became more marked. It has been practically arrived at in comparatively recent years. To read into the statute (Judiciary Law, § 143) the implied power for which defendants-appellants contend, would be to again open a Pandora's box to inequality, inequity and confusion. This is

illustrated by the effects, some known, some unknown, which have issued out of the amendments already made to the discriminatory resolution which has been condemned. I instance the uncertainty as to whether the salary of surrogate in the counties within greater New York, exclusive of Richmond, elected after certain dates, would, by force of said amendments and under the provisions of section 178 of the Judiciary Law, be equalized with the salary of those justices of the Supreme Court resident in the metropolitan area whose salaries are admittedly beyond the reach of reduction by defendants-appellants, or with the salaries of those who are less fortunate because of the exercise of the implied power contended for. Other well known rules of construction aid in the search. The grant of the express power now contained in the aforesaid section 143 has its origin as far back as 1852 (L. 1852, ch. 374, § 7) since which time its donee has never before assumed to act under the questioned power, by an effort to diminish what it was authorized to provide. (*Grimmer* v. *Tenement House Dept., New York City,* 205 N. Y. 549, 550; *Gen. Fireproofing Co.* v. *Keepsdry Const. Co.,* 225 N. Y. 180, 186; *McCarthy* v. *Woolston,* 210 App. Div. 152, 156 and cases cited.) We may be assisted, too, by another rule that the construction of a statute is favored which makes it operate equally on those within its purview and which avoids unjust discrimination. (*People ex rel. Beaman* v. *Feitner,* 168 N. Y. 360, 366.) Patently a denial of the questioned power so operates. And, also, that when mischief will result from a construction which would use a different rule from that long followed, the customary or practical interpretation long acted upon will be followed if not clearly contrary to the legislative intent. (*Matter of W. S. A. & P. R. R. Co.,* 115 N. Y. 442, 447–448.) We instance again the statutes' long repose.

A simple study of the plain language of the statutes and a seemingly ready understanding of their terms is revealing. In reference to the compensation of justices of the Supreme Court, it is enacted (Judiciary Law, § 142) that those elected in the first and second judicial departments, " *shall continue to receive* * * * *as now provided by law, such additional compensation as they are now receiving* * * *,*" and this pronouncement is made applicable " * * * *to the justices now in office and to those hereafter elected or appointed.*" As to the petitioners-respondents, such was the law prior to their induction in office. It is undisputed that the above reference to what those

*then in office* " are now receiving " was effective to prevent any subsequent reduction by defendants-appellants in the amount of additional compensation as it had then been fixed by them; but there must also be read with such pronouncement the further direction that such justices shall also continue to receive such additional compensation " as now provided by law," and this latter provision must in turn be interpreted in the light of the power delegated by the next section of the statute (§ 143) which gave power to increase the amount they were so receiving. The continuation to receive must be held to include any subsequent increase in the added increment. The phrase " as now provided by law," must be held to include the delegated power to increase, for such power also continued as a part of the law. As thus read not only was the additional compensation as thus fixed (in 1926) rendered *wholly* incapable of reduction by defendants-appellants, but, when later increased by them, as provided by law, it was made to continue as an additional increment and, by express and unequivocal pronouncement, such was made applicable to those justices thereafter " elected or appointed." It seems plain that a plan of uniformity was thus aimed at and achieved. This being so defendants-appellants were without power to omit to provide and pay to, or to withhold from respondents the portions of their salaries which had thus been fixed and determined by law; and the attempt to do so by the enactment of the discriminatory resolution was unauthorized for the statute itself thus provides a definite negation of the implied power under which they have assumed to act, and such action on their part amounts to an attempted use of a nondelegated if, indeed, not a nondelegable law-making power, conferred only upon the State Legislature, within constitutional limits.

If, in spite of the rules of construction above referred to, and in disagreement with the aforesaid analysis of the plain words of the statute, we should still say that the power to provide and pay the additional compensation impliedly carries with it, subject to the limitations aforesaid, the power to diminish it, we are then met with the question as to whether such implied power was delegable. We must here recognize that since the office of justice of the Supreme Court is a State office, the power to fix its salary is in the general law-making body of the State. (*Freund* v. *Hogan,* 264 N. Y. 203, 204.) While it may be readily granted, as a general proposition, that whenever a statute grants the power to do an act with unrestricted discretion as to the manner of its execution, all reasonable and

necessary incidents in the manner of its exercise are also granted (*Mayor, etc., of N. Y.* v. *Sands,* 105 N. Y. 210, 215–216) this, however, is a far cry from implementing a doctrine of *laissez faire* in the general field of law making as regards the permitted act, once it has been performed as a function of the State Government. So in the case here, once the option to perform was exercised it became, in effect and to the extent of its reach, *the completed act of the State in the fixing of the salary.* To read into the option an implied power to undo or vary the effects of the act performed would thus translate it into a power which is nondelegable in the field of general law making. While the Legislature may confer discretion as to the administration of the law it may not delegate or surrender its authority to say what the law shall be. (*Matter of N. Y. Elevated R. R. Co.,* 70 N. Y. 327; *People* v. *Klinck Packing Co.,* 214 N. Y. 121, 138; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533, 544.) The amount of the salary for the office, in this case, is a matter of " what the law shall be." The Legislature has spoken by saying, generally as regards the justices in the first and second judicial districts, that it shall be a certain amount plus such additional amount as the local body may determine. It is not now, nor has it ever been, suggested that it was unlawful to delegate the power to add an increase. Such a conferment must then relate itself, in the action upon the option, to the field of administration only, and when accomplished, as a permitted complement to the sovereign act, it merges in it and becomes a matter of what the Legislature has said the law shall be. Any subsequent change may only be made by sovereign act. I favor an affirmance of the order appealed from.

FOSTER, J. (dissenting). The respondents on this appeal are justices of the Supreme Court in the first and second judicial districts of New York. The appeal is from an order of the Supreme Court, at Special Term, New York County, directing appellants, constituting the Board of Estimate of the City of New York, to provide for payment to respondents of the difference between additional compensation at the rate of $10,000 per annum and the amount heretofore paid to each respondent as additional compensation for his services as a justice of the Supreme Court. The order appealed from invalidated a resolution adopted by the Board of Estimate which purported to provide additional compensation to justices elected or appointed after November 2, 1939, at the rate of $7,500 per annum instead of $10,000 per annum as theretofore provided.

The proceeding below was brought under article 78 of the Civil Practice Act to compel the members of the Board of Estimate to perform a duty alleged to be specifically enjoined upon them by law.

The salary of each trial justice of the Supreme Court as paid by the State is now $15,000 a year. The power to fix such salary rests in the Legislature, as provided in the State Constitution (art. VI, § 19), and such power is plenary so far as the Legislature is concerned, except as it is restrained by the constitutional prohibition that the salary of a justice shall not be reduced during the term of his office. Since 1852, in the case of the first district, and for many years in the case of the second, the City of New York, under authority granted by the Legislature by way of various statutes, has paid to justices residing in the first and second districts annual compensation in addition to that paid by the State to all justices. (L. 1852, ch. 374, § 7; L. 1882, ch. 410, § 1108; Judiciary Law, 1909, § 143 as amd. by L. 1928, ch. 818; L. 1941, ch. 290, § 8.) From 1909 to 1930 such additional compensation was fixed at $7,500 per annum, and in 1930 was increased to $10,000. Then, on November 2, 1939, the Board of Estimate sought to reduce the amount to $7,500 for justices thereafter appointed or elected. It is the resolution which purported to make this reduction that has been held invalid by the Special Term.

The grant of authority delegated to the Board of Estimate is presently found in section 143 of the Judiciary Law which reads in part: " The board of estimate of the city of New York may provide * * * for payment to the justices of the supreme court resident in the first and second judicial districts * * * such additional compensation as such board may deem proper ".

This section, however, must be read in connection with section 142 which states in part: " Each justice of the supreme court shall receive from the state the sum of fifteen thousand dollars per year. Those justices elected in the first and second judicial departments shall continue to receive from their respective cities, counties or districts, as now provided by law, such additional compensation as they are now receiving therefrom * * *. The provisions of this section shall apply to the justices now in office and to those hereafter elected or appointed ".

This section was added by the Laws of 1926, chapter 155, section 2 and amended by the Laws of 1928, chapters 804 and 819 and Laws of 1929, chapter 464, section 1, in effect April 10, 1929.

Appellants contend that these sections delegate to the city

the power to increase or decrease additional compensation, in its discretion, over and above a minimum of $7,500 a year. The minimum is stated in that amount because at the time section 142 was enacted in 1926, and at the time of the last amendment in 1929, such additional compensation was being paid at the rate of $7,500 a year, and the intent of the section was to prohibit reduction of additional compensation below this amount.

The respondents contend that this construction is erroneous on the basis that it is impossible for justices elected after April 10, 1929, to continue to receive the additional compensation they were receiving on that date, for justices thereafter elected were not receiving any compensation on that date. This reasoning appears to us to be strained and laborious. As we read the section it simply means that the justices in office at the time of the enactment of the section, or at the date of its last amendment, were to receive the additional compensation then in effect, and that all justices thereafter appointed or elected were to receive a like amount. Beyond this we cannot perceive any restraint on the Board of Estimate to exercise its discretion under the authority granted in section 143. If, as a matter of law, a discretion once exercised could never thereafter be changed as to newly elected justices then there was no occasion for the enactment of those provisions in section 142 which we have just quoted. The very fact of their enactment seems rather clear proof to us that the Legislature did not consider its grant of power to the city to provide additional compensation, in existence for more than three-quarters of a century, limited solely to increases.

We agree with the court below that " it is repugnant to sound principles of judicial administration to have justices performing the same functions and carrying the same responsibilities receiving different compensation " (182 Misc. 507, 511), but we are confronted with a question of power flowing from legislative enactment which precludes any decision on a basis of what we may think is wise and proper. We know of no legislative or constitutional prohibition in this State against classifying the justices of the same court on a salary basis as of the time of their appointment or election. We do not view the cases cited as authorities for restraint in this phase of the matter under the statutory situation that exists here. In the absence of such restraint the vice inherent in such a situation can only be cured by the Legislature.

Respondents challenge the modifications of the original resolution of 1939 by the resolutions of 1941 and 1942, which provide

that the $7,500 rate should be inapplicable to any justice assigned to the Appellate Division, or to any justice who was in office on July 1, 1939. We do not feel called upon to pass on the validity of those modifications. Even if they are held invalid, the original resolution reducing additional compensation for new justices would still stand. Respondents' real complaint is against the original resolution, and it is on the basis of their charge that it was illegal that they seek to compel appellants to perform a duty enjoined upon them as a matter of law. On that theory we think they failed to make out a case.

The order should be reversed, without costs, and as a matter of law.

BLISS, J., concurs with HEFFERNAN, J.; BREWSTER, J., concurs in a separate opinion; FOSTER, J., dissents in an opinion in which HILL, P. J., concurs.

Order appealed from affirmed, with fifty dollars costs and disbursements.