In the Matter of HENRY EISIG et al., Petitioners, against J. EDWARD CONWAY et al., Constituting the Civil Service Commission of the State of New York, Respondents.

Supreme Court, Special Term, Albany County, May 19, 1950.

*Schaffer & Brown* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Herman N. Harcourt* and *George A. Radz* of counsel), for respondents.

TAYLOR, J. This is an application for an order pursuant to article 78 of the Civil Practice Act annulling the action of the State Civil Service Commission fixing an eye standard herein of 20/40 in each eye without glasses, directing the said commission to place the names of the petitioners upon any eligible list resulting from the examination, restraining the commission pending this application from promulgating the eligible list for parole officer, Division of Parole, Executive Department, and from appointing or certifying for appointment any person therefrom. I have heretofore held that the petition is sufficient to withstand an attack under section 1293 of the Civil Practice Act.

In April, 1948, the Civil Service Commission advertised the holding of an open examination for the position of parole officer in the Division of Parole, which examination consisted of two parts, one of which was written and concerned the knowledge and abilities involved in the performance of the duties of that position with a relative weight of four and the other of which involved training and experience constituting an evaluation of

the candidate's past education and work experience of the relative weight of six.

The petitioners having filed their applications and having been held qualified to participate in said examination, took the same and were thereafter advised that they had passed the written and oral parts thereof and had also met the experience requirements satisfactorily.

Subsequently they were notified by the commission to appear for a physical examination, which notification stated that they would be required to meet an eyesight standard of 20/40 in each eye without glasses and that candidates unable to meet such eye standard would be rejected. Their physical examinations disclosed that each had vision of 20/100 in each eye without glasses, whereupon they were disqualified by the commission and rejected as applicants for the position.

The petitioners contend that the commission is estopped to fix the eyesight standards of 20/40 in each eye without glasses, that its action was capricious, arbitrary and unreasonable and in violation of the State Constitution, Civil Service Law and rules of the commission.

Regulation IV of the Civil Service Commission provides that announcement of competitive examinations shall be published and posted at least ten days before the date of the examination, which announcement shall contain the preliminary requirements, subjects of examination, relative weights and salary or compensation for the position together with the date and place of the examination and any other material information in regard thereto. Subdivision 4 of section 14 of the Civil Service Law provides that the commission " may refuse * * * *after examination* to certify an eligible * * * who is physically so disabled as to be rendered unfit for his performance of the duties of the position to which he seeks appointment; * * *." (Emphasis supplied.) Subdivision 6 of rule X of the Rules for the Classified Civil Service provides as follows: " 6. Whenever physical qualifications are of prime importance in the proper discharge of duties in any position, applicants must pass a physical examination and be certified as qualified in such respect, either before admission to examination, or before record in the proper eligible list, or before certification for appointment, as the commission may determine." The commission's notice of the examination in this instance made no specific reference to the eyesight standard which was later imposed. The announcement stated that a physical examination would be

required and that applicants "must be physically strong and active, and free from any defect or deformity that would have a tendency to incapacitate them" and that the law provides "that parole officers must be physically, mentally, and morally fitted for parole work  *  *  *." It contained the additional statutory requirements.

The first question to be determined is whether the failure of the commission specifically to state the minimum eyesight requirements for the position in its announcement and notice and to acquaint the petitioners with such requirements until after they had successfully passed the written examination and had met the experience qualifications estopped it thereafter from fixing the eyesight standards which it has. I think that question must be answered negatively. The provisions of the Constitution and the Civil Service Law make merit the basis of appointment to competitive civil service positions in this State to the end that the type best fitted to carry out the duties of positions in the State service may be employed. The statute permits the commission to refuse, after examination, to certify one otherwise eligible who is physically so disabled as to be rendered unfit for the performance of the duties of the position to which he seeks appointment. The rule requires the applicant to pass such a physical examination as the commission may determine and be certified as qualified before appointment where physical qualifications are of prime importance. There is no requirement therein that the physical defects or deformities which the commission would consider sufficiently disabling to render unfit an applicant for a position be included with particularity in the announcement of the examination. This announcement stated that a physical examination would be required. Their satisfactory qualification in the mental examination and the experience test conferred on the petitioners no legal or vested right of appointment unless and until they had satisfactorily met the physical requirements of the position. The fixation of the particular and specific requirements thereof even after they had otherwise qualified did not abridge the constitutional or statutory rights of the petitioners unless the methods used by the commission for the determination of their physical fitness were capricious, unreasonable, unfair or arbitrary although it may be said that it would have been preferable if the commission had included with particularity in the announcement of the examination the established standards of eyesight in order that applicants who could not meet such physical requirements would not be put to the trouble and

inconvenience of taking examinations for positions for appointment to which they were physically disqualified.

At any time after examination and before certification for appointment the commission was empowered to require the petitioners to qualify physically for the positions which they seek provided the standards fixed were not unreasonable or arbitrary.

The rule is well settled that unless the methods and standards used by an appointing body to determine the physical or other fitness of the applicants for employment in the public service are unreasonable, unfair or arbitrary, the exercise of the function may not be the subject of judicial review or interference. (*Matter of Cowen* v. *Reavy*, 283 N. Y. 232; *Matter of Strauss* v. *Hannig*, 256 App. Div. 662, affd. 281 N. Y. 612; *Davis* v. *Wiener*, 260 App. Div. 127, affd. 285 N. Y. 537; *People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570.)

It appears that the duties of a parole officer are essentially twofold, those akin to a social worker engaged in the rehabilitation and supervision of parolees from the reformatories and prisons of the State and those similar to a police officer which require the apprehension, arrest and return of parole violators, most of whom are males. While engaged in the latter endeavor, a parole officer is a peace officer and required to carry firearms. It is common knowledge that many such violators faced with the return to prison for long terms are desperate and dangerous men. One would be credulous, indeed, to believe that the thoughts of many so apprehended and arrested are not on escape. It is not fictional to believe that in many cases the use of firearms both in apprehension and detention is necessary. An officer's need of glasses to provide sufficient vision for that use could be not only a serious handicap in the performance of his duties but also an unnecessary exposure of the public to danger. It may not be said that the commission either as a matter of law or as a matter of fact was arbitrary or capricious in providing for the rejection of applicants with vision sufficiently defective without corrective glasses to meet the established eyesight standards efficiently to discharge the duties of the position. Nor does it appear that the standards so fixed were unusual or unreasonable. Similar or greater eyesight attributes have been required of applicants for appointment to positions such as park patrolmen, State prison and county penitentiary guards and keepers and other town and village peace officers. The fact that such standards were not before prescribed is not in itself evidence of caprice.

Neither the nature of the requirements nor the time of their promulgation was aimed at disqualifying the petitioners. One hundred fifty-eight persons were examined for the position. For all that appears they received the same notification as the petitioners at the same time. The identical standards were fixed for all applicants. Only thirteen of that number failed to qualify because of their inability to meet those standards. Eyesight qualification by 92% of those who took the examination is a cogent argument against its unreasonableness.

I am convinced on the showing here that the standard adopted by the commission for testing the qualifications of these applicants for appointment was reasonable and that the procedure adopted by it in requiring their physical examinations was neither capricious nor unlawful.

The application is denied and the petition is dismissed on the merits.

Present order accordingly.