Carroll G. Walter, J.
In June, 1949, the Board of Examiners of the Board of Education of the City of New York announced the holding of an examination of applicants for licenses as principal of elementary day schools. The examination was to consist in part of written tests and in part of a “ supervision test ”. A by-law of the board provides that the passing grade on written tests shall be fixed by the Board of Examiners after the answer papers have been rated, but before the identity of the applicants has become known to the board or any member of its staff. But another by-law of the board defines a supervision test as a practical test and provides that the passing grade on practical tests, unless otherwise determined by the board, shall be 60%. The latter by-law, not the one I first mentioned, clearly controls the supervision test, and no passing grade other than 60 was fixed for the supervision test prior to the time 8 of the 10 petitioners herein (all petitioners other than Benjamin Alster and Association of Assistant Principals) took the supervision test in April, 1951.
Those eight petitioners were graded by the board as having attained a grade of more than 60%, but after it had so graded them, the board, on or about May 24, 1951, fixed the passing grade in the supervision test at 65%, and because those eight petitioners had not attained 65% it notified them that they had not passed the supervision test.
Petitioners bring this proceeding to compel the board to rate them as having passed the supervision test and to administer to them the remaining parts of the examination in which they have not yet been examined.
The fixing of a passing grade after an examination has been had and the papers graded strikes my mind as fundamentally unjust and as affected with all the abhorrence usually felt for retroactive legislation or for the constitutionally prohibited ex post facto laws.
*411 I have had some difficulty in putting into words just why I feel it is unjust, and perhaps all I can say is that at least some persons go into an examination with the predetermined passing mark in mind and with the intention of beating that mark and relax their efforts after feeling that they have beaten it instead of continuing to do their very best until the end of the examination. But there are some questions in the law with respect to which a page of history is worth more than a volume of logic (New York Trust Co. v Eisner, 256 U. S. 345, 349; Cardozo, Nature of Judicial Process, pp. 54, 55); and so, too, there are times when one’s sense of justice is a better guide to decision than one’s ability to reason.*
In any event, the Commissioner of Education three times has held that the fixing of a passing mark after the examination has been had and the papers graded is unlawful (Matter of Deerson, 74 N. Y. St. Dept. Rep. 123; Matter of Rosenblum, 75 N. Y. St. Dept. Rep. 125; Matter of Schiller, 75 N. Y. St. Dept. Rep. 126); and the Appellate Division has condemned instructions which were misleading as to what per cent constituted the passing mark (Matter of Bridgman v. Kern, 257 App. Div. 420, 424, 425, affd. 282 N. Y. 375) and has held it to be a fatal defect that advance notice was not given to candidates that they would not be permitted to take part II of the examination unless they passed part I thereof. (Matter of Dowling v. Brennan, 284 App. Div. 563.)
In that same case the Appellate Division sustained the action of the board in fixing the passing mark after the examination was had, but it did so only because that case related to written tests and thus came within that by-law of the board which authorizes such fixation, and because of that by-law the candidates had advance notice that the passing mark was to be subsequently determined.
As this case does not come within that by-law, but within the other by-law I have mentioned above, the candidates upon this examination did not have advance notice that the passing mark might be changed from 60% after the examination had been had, and it is that absence of such advance notice that in my opinion gives petitioners a right to complain.
As failure to give candidates advance notice that a failure to pass part I of an examination will prevent them from taking part II thereof is a fatal defect (Matter of Dowling v. Brennan, supra) it seems to me to follow a fortiori that changing the passing grade after the examination without advance notice to the candidates that such change may be made is a fatal defect.
*412 Matter of Dowling v. Brennan (supra) seems to me to stand for the principle that candidates upon a civil service examination must be given advance notice of the ‘1 hurdles ’ ’ that they are to overcome, and the passing mark seems to me to be one of the “ hurdles ” of which they must be given advance notice.
In this case, moreover, there is an additional reason why petitioners are entitled to complain of the board’s action in refusing to rate them as having passed the supervision test. That reason is that two of the candidates upon the examination here in question appealed to the Commissioner of Education from the board’s action in refusing to rate them as having passed the supervision test, and it was upon those appeals that the commissioner rendered the decisions in Matter of Rosenblum and Matter of Schiller (supra). In Matter of Schiller, the commissioner ordered the board to grant Miss Schiller a satisfactory rating in the supervision test although her mark upon that test was less than 65, viz., 60.25% ; and in Matter of Rosenblum he ordered the board to give Mr. Rosenblum another supervision test in accordance with law. The board refused, upon request, to apply the commissioner’s decision to petitioners, and the result thus is that one candidate who received a rating of 60.25 upon the supervision test is declared to have passed while petitioners who received ratings equally good or better are declared to have failed to pass.
It may be that the Education Commissioner’s decisions upon the Schiller and Rosenblum appeals did not automatically annul the board’s rating of these petitioners as not having passed the supervision test (St. John v. Andrews Inst., 192 N. Y. 382; Schultz v. United States Fid. & Guar. Co., 201 N. Y. 230; 4 C. J., Appeal and Error, § 3251; 5 C. J. S., Appeal and Error, § 1952, p. 1479), but those decisions create a situation under which different candidates upon one examination are treated unequally, one, at least, Miss Schiller, being rated as having passed, while these petitioners are rated as not having passed even though their marks were as good if not better than Miss Schiller’s. Surely that result cannot be allowed to stand if there be any legal means of affording petitioners some relief.
The remaining question, therefore, is whether or not petitioners’ right to maintain this proceeding is barred by the four-month period of limitation prescribed in section 1286 of the Civil Practice Act.
If the proceeding be deemed one to review a determination of the board, i.e., their determination that petitioners did not pass the supervision test, then the right to relief is barred, because that determination was made in May, 1951 and this *413 proceeding was not commenced until January 18, 1955. But if the proceeding be deemed one to compel the performance of a duty specifically enjoined by law, i.e., the duty to rate petitioners as having passed the supervision test and to administer to them the remaining tests as to which they have not yet been examined, then the right to relief is not barred, because petitioners ’ demand for the performance of that duty was made on October 25, 1954, and this proceeding was commenced within four months thereafter.
My conclusion is that the proceeding should be deemed one to compel the performance of a duty specifically enjoined by law and that the right to relief consequently is not barred (Matter of Benvenga v. La Guardia, 182 Misc. 507, 513, 514, affd. 268 App. Div. 566, 575, affd. 294 N. Y. 526; Matter of Powers v. La Guardia, 292 N. Y. 695; Matter of Cash v. Bates, 301 N. Y. 258).
The motion is accordingly granted. Settle order.

 “ The life of the law has not been logic; it has been experience ”.— Holmes, Common Law, p. 1.