In the Matter of Daniel F. O'Brien et al., Respondents, *v.* Theodore H. Lang, as Personnel Director of the Department of Personnel of the City of New York, et al., Appellants.

First Department, February 21, 1963.

*John A. Murray* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for appellants.

*William Goffen* for respondents.

*Chester S. Mandel* for Arthur F. Jones and others, *amici curiæ.*

STEVENS, J.   This is an appeal from an order entered June 1, 1962, which granted petitioners' application and, *inter alia,*

directed the Civil Service Commission (herein Commission) to accord to each petitioner the passing mark to which he is entitled in the written examination for promotion from lieutenant to captain, Police Department, City of New York.

This is a proceeding for an order under article 78 of the Civil Practice Act directing Commission to recognize a passing mark of 70% on a promotional examination.

Prior to January 21, 1961, the date of the examination herein involved, petitioners were lieutenants in the Police Department and eligible to take an examination for promotion to the position of captain. The original notice of examination stated applications would be received from October 5, 1960 through October 25, 1960, for the written test to be held January 21, 1961, and that a passing grade of 70% would be required for the written examination. The notice was published in *The City Record*, the official journal of the City of New York, from October 5, 1960 to October 11, 1960. From October 11, 1960, to October 25, 1960, an " Amended Notice " of the examination was so published which likewise set forth a requirement for a passing grade of 70%.

During the period from December 12, 1960, through December 23, 1960, after many of the petitioners had filed, a ." Second Amended Notice " was published which raised the required passing grade in the written test to 75%.

On January 20, 1961, the day before the examination, a " Third Amended Notice " appeared which stated the requirement for a passing grade to be 70%.

On January 21, 1961, the day of the examination, a statement appeared on the cover page of the examination booklet that 75% was required on the written test.

These petitioners took the examination and received grades of between 69.1% and 73%. Pursuant to General Examination Regulation E.17.3 of the Commission, " Whenever the pass mark in the rating of a test * * * has been fixed in terms of a specific numerical score, a candidate who obtains a rating within any fractional part above the next lower whole number shall be deemed to have passed such test, subject, part or examination as the case may be." Thus all candidates who received a grade of 69.1% to 69.9% would have been deemed to have passed a written examination on which the pass mark is 70%.

The petitioners assert that in November, 1961, Commission unlawfully established a pass mark of 75% for the written examination. Commission asserts the publication of a 70% requirement in the " Third Amended Notice " which appeared one day prior to the examination was an error which was not

discovered until November, 1961, and after discovery Commission, on December 5, 1961, duly affirmed 75% to be the correct pass mark, and the insertion of 70% to have been an error.

Commission pointed out that 812 applicants filed under the original notice, 78 filed thereafter under the 75% requirement, and 11 under the " Third Amended Notice."

The official notices of failure were mailed to petitioners on or about December 28, 1961.

The petitioners contend there was an ex post facto increase of the passing grade from 70% to 75%, and this constituted a deprivation of due process of law. Also, the action of Commission was unjust, arbitrary, capricious and illegal.

Special Term held the " fixing of a passing mark almost ten months after the examination was held improper " and granted petitioners the relief sought.

On appeal, Commission urges " [t]he petition should properly have been dismissed. The Commission had the power and the duty to correct its own clerical error and in the absence of bad faith or palpable illegality, its judgment and decision relating to the conduct of a civil service examination should not be disturbed."

Petitioners reassert the contentions advanced below. A brief *amici curiæ* was submitted in support of Commission's position by certain candidates who passed the police captain's promotion examination.

The appeal thus poses an issue as to the power of Commission to vary a passing grade once it announces such grade by publication, and a subsidiary question whether any or such rights vested in petitioners under the original 70% notice that any alteration in the rating requirement constituted an unjust and illegal deprivation. Also, whether, as petitioners contend, there was in fact an ex post facto grade increase.

Commission has the power to prescribe, amend and enforce suitable rules to carry out the provisions of the Civil Service Law and of section 6 of article V of the New York State Constitution, including rules for examinations, appointments, promotions, transfers, etc. (Civil Service Law, § 20; Rules and Regulations City Civ. Serv. Comm., rule II). Such rules when properly adopted shall have the force and effect of law (Civil Service Law, § 20, subd. 2; *Matter of Woods* v. *Finegan*, 246 App. Div. 271; *Matter of Cuzzivoglio* v. *Hamlin*, 202 N. Y. S. 2d 402, affd. 13 A D 2d 614, motion for leave to appeal denied 13 A D 2d 899).

Pursuant to the power vested in it Commission promulgated rule 4. Paragraph 3 of subdivision 5 of such rule provides in part: " [u]nless otherwise specified by resolution or regulation

of the commission, candidates must attain a final examination rating of not less than seventy per cent in an examination in order to be placed upon an eligible list for certification and appointment.'' (See, also, regulation E.17.1.)

Commission in its initial notice did indicate that a passing rating of 70% was essential. Subsequent thereto, in December, 1960, and as a result, at least in part, of conversations with the then Police Commissioner who expressed concern that this rating was less than the 75% established for the sergeants written examination Commission did otherwise specify, and directed that the pass mark be set at 75% instead of the 70% already advertised. This it had the power to do (Rules and Regulations, Civ. Serv. Comm., rule 4.5.3). Thereafter it extended the time during which applications could be filed.

The director of examinations also has the power to fix the required passing rating in any test, subject or part of an examination '' *at not later than the time of the holding thereof.*'' (Rule 4.5.3; emphasis supplied.) This power is properly vested in the director (New York City Charter, ch. 35, § 813; Rules and Regulations, City Civ. Serv. Comm., rule II).

Since Commission has the power to alter the passing rating required prior to the examination, it follows there is no vested (i.e., fixed, accrued, settled) or absolute right in petitioners resulting merely from a publication of the passing grade required. Thus insofar as the original, the amended, or even the ''Second Amended Notice'' is involved, no right vested upon publication.

Commission has power to prescribe examinations for a competitive class, to issue an announcement setting forth the minimum qualifications required and it is required to '' advertise such examination in such manner as the nature of the examination shall require '' (Civil Service Law, § 50; Rules and Regulations of City Civ. Serv. Comm., rule II). '' The date of the first assembled test in a promotion examination [as here involved] shall be stated in the announcement of examination '' (Regulations, City Civ. Serv. Comm., E.13.1). '' Such announcement shall be published daily, in full for at least one week prior to the final date for the receipt of applications in ' The City Record ', and in such other publications as the director may designate   *   *   * announcements shall also be posted conspicuously in the offices of the department of personnel '' Rules and Regulations of City Civ. Serv. Comm., rule 4.1.3). '' The date of all subsequent tests in promotion examinations and all tests in open competitive examinations shall be published in The City Record and conspicuously posted in the offices of the department of personnel

for a period of not less than ten days in advance of the scheduled date of the test. The personnel department, however, reserves the right to change the date of any test" (*ibid,* regulation E.13.2). Such publication and posting constitute public notice (*ibid,* regulation E.13.3).

Under the Rules and Regulations of Commission the appearance, as a rating, of 70% in the "Third Amended Notice" of January 20, 1961, one day before the examination, did not conform to its own requirements of publication for at least one week prior to the examination and was ineffectual to change the passing rating of 75%, of which due notice had been given. It could hardly be argued, if such notice of January 20, 1961, had contained a rating of 80%, that petitioners would have been bound thereby, since it did not conform to Commission's existing rules. Moreover, the raising of the requirement to 75% had been duly and properly passed and published so that all parties were on notice, actually or constructively, of the change. If any doubt existed it must have been dispelled by the appearance of the required rating on the examination booklet for all of the published notices directed the applicants' attention to the question booklet. The purpose of publication is to afford reasonable notice of the requirements of a proposed examination. Commission recognizes this by its own requirement of at least one week's publication of notice.

Commission has wide discretion in fixing the minimum requirements for admission to an examination (*Matter of Wirzberger* v. *Watson,* 305 N. Y. 507; *Matter of Chapin* v. *Schechter,* 23 Misc 2d 190, affd. 13 A D 2d 473; *Matter of Jacob* v. *Schechter,* 22 Misc 2d 549) and in the absence of bad faith, corrupt, or illegal action, or action erroneous in law, it should not be interfered with (cf. *Matter of Kinnerney* v. *Hornell Civ. Serv. Comm.,* 262 App. Div. 39). Commission also has the power to vary the pass mark. (Rule 4.5.3; Rules and Regulations of City Civ. Serv. Comm., regulation E.17.1.)

Merit is the basis for appointment and promotion in competitive civil service, and the ascertainment of such merit, so far as practicable, is to be by competitive examination (N. Y. Const., art. V, § 6; Civil Service Law, §§ 44, 52; Rules of City Civ. Serv. Comm., rule 3.4.5). All applicants for the January 21, 1961, examination were treated exactly alike, with all being required to meet the same minimum requirements, including the 75% pass mark. Thus it is not for us to substitute our judgment for that of Commission (cf. *Matter of Kornbluth* v. *Reavy,* 261 App. Div. 60) where its action is clearly not illegal or unreasonable.

Petitioners, after asserting the 70% pass mark was the correct one, charge that Commission illegally, arbitrarily and capriciously changed the passing grade after the holding of the examination.

Commission asserts the January 20, 1961, publication of 70% was error; neither party discovered the error until November, 1961, and Commission immediately, or in a very short time, on December 5, 1961, duly affirmed the 75% to be the correct pass mark, and the insertion of 70% to be error. Commission "at any time prior to the establishment or during the existence of an eligible list, may correct any manifest error or mistake made in connection with an examination, on its own initiative [as was done here] or in the granting of a claim of manifest error or mistake. The nature of such manifest error or mistake shall be set forth in its minutes" (Rules of Comm., rule 4.5.4).

The error complained of here in no wise affected the competitive nature of the examination, nor did it discriminate between one applicant or group of applicants over the other. The error was corrected prior to the promulgation of the eligible list on March 7, 1962, and before the failure notices were mailed out on or about December 28, 1961. The record is barren of any indication of improper motives or bad faith on the part of the Commission and the error may properly be corrected (cf. *People ex rel. Finnegan* v. *McBride,* 226 N. Y. 252). There is nothing to show Commission knew of or anticipated the effect of the correction on petitioners, or acted with any intention of particularly or unfairly affecting any one of the applicants. The power of correction would seem to be limited only where fraud, illegality or bad faith is shown, or such ambiguity exists that it is impossible to have a sufficiently objective standard for determination (cf. *Matter of Gruner* v. *McNamara,* 298 N. Y. 395; *People ex rel. Finnegan* v. *McBride, supra*; *Matter of Blumenthal* v. *Morton,* 273 App. Div. 497, affd. 298 N. Y. 563). And where the announcement of examination failed to state a requirement of an eyesight standard of 20/40 in each eye, it was held the State Civil Service Commission was not estopped from fixing such eyesight standard after petitioners successfully passed the written examination and had met the experience qualifications for the position (*Matter of Eisig* v. *Conway,* 198 Misc. 770; see, also, rule 4.3.6; regulations E.16.2, E.21.1).

*Matter of Dowling* v. *Brennan* (284 App. Div. 563), cited by petitioners, is not to the contrary, for that case dealt with a failure of the Commission to provide material information to applicants in advance of the examination, and its failure to give objective assurance of the application of certain factors in the

absence of a showing that it was not possible or impracticable to do so. In *Matter of Gilburt* v. *Kroll* (17 Misc 2d 409, affd. 1 A D 2d 819, affd. 2 N Y 2d 896) there was a raising of the passing grade in a practical test in violation of a by-law of defendant, without previous notice to the petitioners, and after it had knowledge of their identities and had graded their papers.

There was no vested right in petitioners to a 70% pass mark and when properly done, Commission, as previously pointed out, could raise such mark to 75% (cf. *Matter of Kornbluth* v. *Reavy*, 261 App. Div. 60). The pass mark of 75% was properly fixed. The single publication on January 20, 1961, was ineffective to change such rating for the reasons heretofore stated. If any error existed it was within Commission's power to correct the same and such power existed at the time the correction was made.

The order appealed from should be reversed on the law, and the petition dismissed, without costs to either party.

RABIN, J. P., McNALLY, STEUER and NOONAN, JJ., concur.

Order, entered on or about June 1, 1962, unanimously reversed on the law, and the petition dismissed, without costs.